MANATT, PHELPS & PHILLIPS, LLP
SCOTT M. PEARSON (CA Bar No. 173880)
Email: SPearson@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
Facsimile: 310.312.4224

MEHUL N. MADIA (VA Bar No. 71231; D.C.
Bar No. 988279) (Pro Hac Vice forthcoming)
Email: MMadia@manatt.com
1050 Connecticut Avenue, N.W., Suite 600
Washington, D.C. 20036
Telephone: 202.624.3344
Facsimile: 202.585.6600

C. RYAN FISHER (CA Bar No. 312864)
Email: CFisher@manatt.com
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Telephone: 714.338.2722
Facsimile: 714.371.2550

*Attorneys for Defendant*
*AXCESS FINANCIAL SERVICES, INC.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAKISHA COLE LINTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AXCESS FINANCIAL SERVICES, INC. an Ohio Corporation, and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No. 3:23-cv-1832<br><br>DEFENDANT AXCESS FINANCIAL SERVICES, INC.'S NOTICE OF REMOVAL<br><br>*[Removed from Alameda Superior Court, Case No. 23-CV-028384]*<br><br>[Filed concurrently with:<br>(1) Declaration of Kevin Vennemeyer;<br>(2) Civil Case Cover Sheet;<br>(3) Appendix of State Court Documents;<br>(4) F.R.C.P. 7-1 Disclosures;<br>(5) Certification of Conflicts and Interested Entities or Persons;<br>(6) Proof of Service.]<br><br>Complaint Filed: February 24, 2023 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW

402055082.2

**TO: THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF, AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that defendant Axcess Financial Services, Inc. ("Axcess" or "Defendant"), files this Notice of Removal pursuant to 28 U.S.C. §§ 1332(d)(2), 1441(a), 1446, and 1453(b), based on the grounds set forth below.

## I.    <u>STATEMENT OF JURISDICTION AND VENUE</u>

1.    The state court action is one that may be removed pursuant to 28 U.S.C. § 1441(a) because the federal district court has original jurisdiction over the action.

2.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than 100 members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d).

3.    CAFA authorizes removal of such actions in accordance with 28 U.S.C. §§ 1446 and 1453(b). As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

4.    Plaintiff originally brought this action in the Superior Court of the State of California, County of Alameda ("Alameda County Superior Court"). Therefore, venue lies in the Northern District of California pursuant to 28 U.S.C. §§ 84(c)(2), 1441(a), and 1446(a).

## II.    <u>PLEADINGS, PROCESS, AND ORDERS</u>

5.    On February 24, 2023, Plaintiff filed an unverified class action complaint against Defendant and unnamed Doe defendants in the Alameda County

Superior Court, as Case No. 23-CV-028384 (the "Complaint").  The Complaint asserts a cause of action against Defendant under California Business and Professions Code § 17200, et seq.  (Compl. ¶¶ 29-36.)

6.    In the Complaint, Plaintiff seeks (a) restitution for herself and all class members; (b) injunctive relief, including a "public injunction for the benefit of the People of the State of California;" (c) reasonable attorneys' fees; (d) costs of suit; and (e) "such other relief as this Court deems proper."  (Compl., "Prayer for Relief" at p. 8.)

7.    On February 28, 2023, Plaintiff served Defendant through Defendant's registered agent for service of process, Corporation Services Company, with the: (a) Summons; (b) Complaint; (c) Civil Case Cover Sheet; (d) Notice of Case Management and Trial Setting Conference, and (e) Notice of Complex Determination Hearing.  Attached hereto as **Exhibit 1** is a true and correct copy of the package of state court action documents, including the Complaint, served by Plaintiff on Defendant's registered agent, along with the service of process transmittal summary and process server delivery details, attached hereto as **Exhibit 2**.

8.    On April 4, 2023, the Honorable Brad Seligman continued the Complex Determination Hearing to May 30, 2023, after issuing a tentative ruling on March 30, 2023, reflecting this intention.  A true and correct copy of the Order continuing the Complex Determination Hearing and the tentative ruling are attached hereto as **Exhibit 3 and 4**, respectively.  To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the Alameda County Superior Court or served by any party other than as described above.  To Defendant's knowledge, no proceedings related hereto have been heard in the Alameda County Superior Court.

1

### III.    <u>TIMELINESS OF REMOVAL</u>

2       9.    An action may be removed from state court by filing a notice of

3   removal – together with a copy of all process, pleadings, and orders served on the

4   defendant – within thirty days of defendant receiving service of the initial pleading.

5   *See* 28 U.S.C. § 1446(b)(1).  "[I]f the case stated by the initial pleading is not

6   removable, a notice of removal may be filed within 30 days after receipt by the

7   defendant, through service or otherwise, of a copy of an amended pleading, motion,

8   order or other paper from which it may first be ascertained that the case is one

9   which is or has become removable."  28 U.S.C. § 1446(b)(3).

10      10.    "[N]otice of removability under § 1446(b) is determined through

11  examination of the four corners of the applicable pleadings, not through subjective

12  knowledge or a duty to make further inquiry."  *Harris v. Bankers Life & Cas. Co.*,

13  425 F.3d 689, 694 (9th Cir. 2005).  As *Harris* further provides:

14
> Thus, the first thirty-day period for removal in 28 U.S.C. §
15  > 1446(b) only applies if the case stated by the initial pleading is
> removable on its face.  If we were to flip the burden and interpret the
16  > first paragraph of 28 U.S.C. § 1446(b) (the first thirty-day window) to
> apply to all initial pleadings unless they clearly reveal that the case is
17  > not removable, defendants would be faced with an unreasonable and
> unrealistic burden to determine removability within thirty days of
18  > receiving the initial pleading.
19
20  *Harris*, 425 F.3d at 694–95 ("We join with the other circuits that have adopted the

21  same approach to indeterminate pleadings – the ground for removal must be

22  revealed affirmatively in the initial pleading in order for the first thirty-day clock

23  under § 1446(b) to begin.").

24      11.    "A CAFA case may be removed at any time, provided that neither of

25  the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.  *Roth v.*

26  *CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013) (citing 28

27  U.S.C. § 1453(b)) ("Defendants promptly investigated to determine whether the

28  case was removable.  Then, upon learning that it was removable, they promptly

filed a notice of removal."). "[E]ven if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Id.* at 1125.

12. Removal of this action is timely because the grounds for removal was not revealed affirmatively in the initial pleading. Plaintiff seeks, in pertinent part, restitution for herself and all class members and injunctive relief, including a "public injunction for the benefit of the People of the State of California." (Compl., "Prayer for Relief" at p. 8.) The Complaint is thus "indeterminate" as to removability as the "four corners of the applicable pleadings" do not clearly reveal the true amount in controversy or the true number of potential class members. *See Harris*, 425 F.3d at 694-95. Indeed, as further outlined below, Defendant's Notice of Removal is based on its prompt internal analysis and inquiry of its business operations, and how those operations would be affected should Plaintiff succeed in obtaining her requested relief. Accordingly, "neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) [have] been triggered[,]" *Roth*, 720 F.3d at 1126, making this removal timely.

## IV. CAFA JURISDICTION

13. As noted above, this Court has original jurisdiction over this action pursuant to CAFA, which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than 100 members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). As set forth below, this case meets each CAFA requirement for removal.

### A.    This Action is a Putative Class Action

14.    Original jurisdiction under CAFA applies to any civil action that "is a class action." 28 U.S.C. § 1332(d)(2).  A "class action" means "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

15.    California Code of Civil Procedure § 382 provides in part that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."  Section 382 is the California state analog to Federal Rule of Civil Procedure 23.  *See, e.g., Huckleby v. Manpower, Inc.,* 2010 WL 11552970, at *3 n.1 (C.D. Cal. Sept. 7, 2010).

16.    The Complaint is styled as a class action. (Compl. ¶¶ 23-28.)  Plaintiff seeks "to represent a Class defined as follows":

> All individuals who, during the limitations period, (a) obtained a loan in California that was advertised, made, or serviced by Axcess and (b) paid interest on such a loan at a rate in excess of ten percent (10%). Excluded from the Class are all employees of the Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this action is assigned.

(*Id.* ¶ 23.)  Plaintiff's cause of action is alleged on a class-wide basis and seeks class-wide relief.  (*Id.* ¶¶ 29-36.)  Furthermore, Plaintiff's Prayer for Relief seeks restitution to "Plaintiff and all Class members" and "public injunctive relief."  (*Id.* p. 8.)  This action is thus a putative class action removable under 28 U.S.C. § 1332(d)(2).

### B.    The Putative Class is Sufficiently Numerous

17.    Under 28 U.S.C. § 1332(d)(5)(B), the number of members of all proposed plaintiff classes must equal or exceed 100 in the aggregate for the action to be removable under CAFA.

18.    Plaintiff brings this "class action" and seeks to represent a class consisting of the following individuals: "All individuals who, during the limitations period, (a) obtained a loan in California that was advertised, made, or serviced by Axcess and (b) paid interest on such a loan at a rate in excess of ten percent (10%)." (Compl. ¶ 23.)

19.    Axcess's prompt internal investigation reveals that it has well over 100 customers that obtained a loan in California that was serviced by Axcess with an interest rate in excess of 10% between one year prior to the filing of this complaint and the present.  (Declaration of Kevin Vennemeyer in Support of this Notice of Removal ["Vennemeyer Decl."] ¶ 5.)  Thus, CAFA's requirement that the putative class consist of 100 or more individuals is satisfied.

### C.    Defendant is not a Governmental Entity

20.    CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."  28 U.S.C. § 1332(d)(5)(B).

21.    Defendant is an Ohio corporation, and an indirect subsidiary of CNG Holdings, Inc., also an Ohio corporation.  Defendant is not a state, state official, or other government entity exempt from CAFA.  (Vennemeyer Decl. ¶ 4.)

### D.    There is Diversity of Citizenship Between the Parties.

22.    CAFA's minimal diversity requirement is satisfied, thus making the putative class action removable, if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).  In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the unnamed putative class members.  *See Snyder v. Harris*, 394 U.S. 332, 339-40 (1969).  Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal.  *See Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131

(9th Cir. 2002).  Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

23.    For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (person's domicile is place she resides with intention to remain).  Furthermore, allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship.  *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (complaint's residency allegation "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise").

24.    At the time Plaintiff commenced this action and, upon information and belief, at the time of removal, Plaintiff is a citizen of and resides in the State of California.  (*See* Compl. ¶ 4 [Plaintiff Lakisha Cole Linton "[i]s an individual residing in Alameda County, California.").

25.    Defendant is now, and was at the time the Complaint was filed, a citizen of a state other than the state of California within the meaning of 28 U.S.C. § 1332(c)(1) because Defendant is now, and was at the time the Complaint was filed, an Ohio corporation.  (Vennemeyer Decl. ¶ 4.)  A corporation "is a citizen where it is incorporated and where it has its principal place of business." *Stelzer v. CarMax Auto Superstores California, LLC,* 2013 WL 6795615, at *2 (C.D. Cal. Dec. 20, 2013); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (adopting the "nerve center test," which locates a corporation's principal place of business in the place "where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is "typically" the corporation's headquarters).  Defendant's principal place of business is in Cincinnati, Ohio, *see id*. ¶ 4, and is, and at all relevant times has been, a citizen of the state of Ohio.  28 U.S.C. § 1332(c)(1).

26.    The presence of Doe defendants in this case (DOES 1 through 50, Inclusive) has no bearing on diversity with respect to removal.  *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

27.    Accordingly, the named Plaintiff is a citizen of a state different from Defendant, and diversity exists for purposes of CAFA jurisdiction.  *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

**E.    The Amount in Controversy Exceeds $5,000,000**

28.    Under the removal statute, "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).

29.    In *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014), the Supreme Court recognized that, "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required.  *Id.* at 89.  "[T]he defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court diversity jurisdiction.  *Id.* at 87.

30.    For purposes of determining whether the amount in controversy has been satisfied, the Court must presume that Plaintiff will prevail on her claim.  *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability.")).  The ultimate inquiry is what amount is put "in controversy" by the allegations of a plaintiff's complaint, not what a defendant might actually owe.

1   *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount

2   in controversy is simply an estimate of the total amount in dispute, not a

3   prospective assessment of [a] defendant's liability."); *Ibarra v. Manheim Invs., Inc.*,

4   775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (even when the court is persuaded the

5   amount in controversy exceeds $5,000,000, defendants "are still free to challenge

6   the actual amount of damages in subsequent proceedings and at trial" because they

7   are only estimating the amount in controversy).

8        31.    Defendant denies the validity and merit of the entirety of Plaintiff's

9   claim and the claims for monetary, injunctive, and other relief that flow therefrom.

10  For purposes of removal only, however, and without conceding that Plaintiff or the

11  putative class are entitled to any damages or penalties whatsoever, the allegations of

12  Plaintiff's Complaint establish that the amount in controversy exceeds CAFA's

13  jurisdictional minimum of $5,000,000.

14       32.    Plaintiff asserts a cause of action against Defendant for an alleged

15  violation of California Business and Professions Code § 17200, et seq.  (Compl. ¶¶

16  29-36.)

17       33.    Although Plaintiff does seek restitution on behalf of herself and all

18  class members for "interest paid on their respective loans in excess of the amount

19  authorized by California law" (Compl. ¶ 36), the true "object of the litigation" is

20  Plaintiff's claim for a "public injunction to stop Axcess from advertising, making,

21  and/or servicing loans in California . . . ."  (Compl. ¶ 20.)  *See generally Hunt v.*

22  *Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions

23  seeking declaratory or injunctive relief, it is well established that the amount in

24  controversy is measured by the value of the object of the litigation.").

25       34.    When, as here, the plaintiff's complaint does not state the amount in

26  controversy, the defendant's notice of removal may do so.

27       35.    If this Court were to order the specific public injunctive relief per

28  Plaintiff's demand, based on Axcess's internal inquiry, the amount in controversy

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW

402055082.2

- 10 -                                NOTICE OF REMOVAL

would exceed the jurisdictional requirement, exclusive of interest and costs. A public injunction prohibiting Defendant from servicing loans with an interest rate of more than 10% would impose severe financial burdens on Defendant, leading to an amount in controversy well in excess of $5,000,000. (Vennemeyer Decl. ¶ 6.) Thus, as the "value of the object of the litigation" (*Hunt*, 432 U.S. at 347) is more than $5,000,000, the amount in controversy threshold requirement under 28 U.S.C. § 1332(d)(6) is satisfied.

36.    In addition, based on Axcess' internal inquiry, if Axcess was required to pay restitution as to interest paid in excess of 10% on loans originated or serviced in California during the four year limitations period, it would cause financial damage to the company in excess of $5,000,000. (Vennemeyer Decl. ¶ 7.)

## V.    COMPLIANCE WITH STATUTORY REQUIREMENTS

37.    In accordance with 28 U.S.C. § 1446(d), Defendant will provide written notice of the filing of this Notice of Removal to counsel of record for Plaintiff's, and Defendant will promptly file a Notice of Removal of Action to Federal Court with the Clerk of Alameda County Superior Court.

38.    In accordance with 28 U.S.C. § 1446(b)(2)(A), all real and named defendant entities named in this lawsuit have consented to removal. *See Proctor v. Vishay Intertechnology Inc.*, (9th Cir. 2009) 584 F.3d 1208, 1225 ("[T]he filing of a notice of removal can be effective without individual consent documents on behalf of each defendant. One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient."). Axcess is the only named defendant to the lawsuit and is filing this motion in support of removal.

39.    By filing this Notice, Defendant does not waive and expressly reserves any defenses that may be available to it, including, without limitation, any defenses relating to being a wrongfully named defendant, service of process and jurisdiction, and any claim that this action is subject to mandatory arbitration. Defendant further

does not concede that the allegations in the Complaint state a valid claim under any applicable law.

40.    Defendant reserves the right to submit additional factual support, evidence, and affidavits to support the basis for federal jurisdiction as necessary at the appropriate time.

WHEREFORE, Defendant hereby removes this action from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California pursuant to CAFA.

Dated:        April 14, 2023                    MANATT, PHELPS & PHILLIPS, LLP


By: /s/ Scott M. Pearson
_____
Scott M. Pearson
Mehul N. Madia
C. Ryan Fisher

Attorneys for Defendant
AXCESS FINANCIAL SERVICES, INC.

# Exhibit 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>AXCESS FINANCIAL SERVICES, INC., an Ohio corporation;<br>and DOES 1-50, inclusive<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>LAKISHA COLE LINTON, individually and on behalf of all others<br>similarly situated | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Alameda<br>02/24/2023<br>Chad Finke, Executive Officer / Clerk of the Court<br>By:_____A. Linhares_____ Deputy |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Alameda County Superior Court<br>1225 Fallon Street<br>Oakland, CA 94612 | CASE NUMBER:<br>*(Número del Caso):*<br>**23CV028384** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James T. Hannink (131747); Zach P. Dostart (255071); DOSTART HANNINK LLP
4225 Executive Square, Suite 600, La Jolla, CA 92037; (858) 623-4200

| | | | | |
|---|---|---|---|---|
| DATE:<br>*(Fecha)* 02/24/2023 Chad Finke, Executive Officer / Clerk of the Court | Clerk, by<br>*(Secretario)* A. Linhares | | | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Axcess Financial Services, Inc., an Ohio corporation
   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| James T. Hannink (131747); Zach P. Dostart (255071)<br>DOSTART HANNINK LLP, 4225 Executive Square, Suite 600, La Jolla, CA 92037 | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>**02/24/2023 at 04:56:02 PM**<br>By: Angela Linhares,<br>Deputy Clerk |

TELEPHONE NO.: (858) 623-4200   FAX NO. *(Optional):* (858) 623-4299
E-MAIL ADDRESS: jhannink@sdlaw.com; zdostart@sdlaw.com
ATTORNEY FOR *(Name):* Plaintiff Lakisha Cole Linton

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:
Linton v. Axcess Financial Services, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | **23CV028384** |
| | | | JUDGE: | |
| | | | DEPT.: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [x] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [x] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve            courts in other counties, states, or countries, or in a federal
   c. [x] Substantial amount of documentary evidence              court
                                                              f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 1. Violation of the California Unfair Competition Law
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 24, 2023

Zach P. Dostart
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice— Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

*Unified Rules of the Superior Court of California, County of Alameda*

F. ADDENDUM TO CIVIL CASE COVER SHEET

| Short Title: | Case Number: |
|---|---|
| Linton v. Axcess Financial Services, Inc. | |

## CIVIL CASE COVER SHEET ADDENDUM

### THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

[X] Oakland, Rene C. Davidson Alameda County Courthouse (446)

[ ] Hayward Hall of Justice (447)

[ ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case?  [ ] yes  [ ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (G) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [X] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq)  [ ] Yes  [ ] No** | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

For Unlawful Detainer: **Is the deft. in possession of the property?  [ ] Yes  [ ] No**

1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK LLP
   4225 Executive Square, Suite 600
4  La Jolla, California 92037-1484
   Tel:  858-623-4200
5  Fax: 858-623-4299

6  Attorneys for Plaintiff

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
02/24/2023 at 04:56:02 PM
By: Angela Linhares,
Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                           COUNTY OF ALAMEDA

10

11  LAKISHA COLE LINTON,
    individually and on behalf of all others
12  similarly situated,

13              Plaintiff,

14  vs.

15  AXCESS FINANCIAL SERVICES, INC.,
16  an Ohio corporation;
    and DOES 1-50, inclusive,
17

18              Defendants.

CASE NO.  23CV028384

CLASS ACTION

COMPLAINT FOR:

VIOLATION OF THE UNFAIR
COMPETITION LAW
[Bus. & Prof. Code, § 17200 et seq.]

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.    This class action lawsuit alleges that defendant Axcess Financial Services, Inc. advertises, makes, and services consumer installment loans to California residents for which it charges interest that exceeds the maximum rate allowed under California law. Such conduct violates California's Unfair Competition Law, Bus. & Prof. Code, § 17200 et seq ("UCL").

2.    This action seeks injunctive relief to enjoin Axcess from advertising, making, or servicing loans in California that do not comply with California's interest rate limitations.

3.    This action also seeks monetary restitution for plaintiff Lakisha Cole Linton and other California consumers to whom Axcess has charged interest exceeding the amount allowed by law.

**THE PARTIES**

4.    Plaintiff Lakisha Cole Linton ("Plaintiff") is an individual residing in Alameda County, California.

5.    Plaintiff is informed and believes and thereon alleges that Axcess Financial Services, Inc. ("Axcess" or "Defendant") is an Ohio corporation with its principal place of business at 7755 Montgomery Road, Suite 400, Cincinnati, Ohio. Axcess does business in California, including the advertising, making, and servicing of consumer installment loans. On information and belief, Axcess does not have an office in California and conducts its advertising and other business activities through the internet, telephone, and mail. Axcess does business under its own name as well as under the fictitious business name, or brand, "Xact."

6.    Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known. Plaintiff alleges on information and belief that each of the DOE defendants is affiliated with Axcess in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the other defendants. This Complaint refers to Axcess and the DOE defendants collectively as "Defendants."

7.    Venue is proper in this Court because Plaintiff resides in Alameda County and the installment loan between Axcess and Plaintiff was entered into in Alameda County.

CLASS ACTION COMPLAINT

1

## **BACKGROUND**

2    8.    Axcess does not hold a license to make consumer or commercial loans in California.

3  Accordingly, Axcess is subject to the interest rate limitations set forth in Article XV, Sections 1(1)

4  and 1(2), of the California Constitution.

5    9.    Pursuant to Article XV, Section 1(1) of the California Constitution, for any loan or

6  forbearance of money for use primarily for personal, family, or household purposes, the maximum

7  rate of interest is ten percent (10%) per annum.

8    10.    Pursuant to Article XV, Section 1(2) of the California Constitution, for any loan or

9  forbearance of money for any use other than primarily for personal, family, or household purposes,

10  the maximum rate of interest is the higher of (a) ten percent (10%) per annum or (b) five percent

11  (5%) per annum plus the federal funds rate prevailing on the 25th day of the month preceding the

12  earlier of (i) the date of execution of the contract for the loan, or (ii) the date of making the loan.

13  During the four years preceding the filing of this Complaint, the federal funds rate has never

14  exceeded 4.75%. Accordingly, during the four years preceding the filing of this Complaint, the

15  maximum rate of interest permitted pursuant to Article XV, Section 1(2), has never exceeded 10%.

16    11.    Notwithstanding those interest rate limitations, when California consumers obtain an

17  installment loan from Axcess, the annual interest rate is set at rates that often exceed 200%.

18  Obviously, that far exceeds the maximum interest rates allowed under Article XV, Sections 1(1)

19  and 1(2) of the California Constitution.

20    12.    Axcess is apparently trying to circumvent California's interest rate limitations by

21  means of a "rent-a-bank" arrangement between Axcess, on the one hand, and a state-chartered bank

22  in Utah, Capital Community Bank ("CCBank"), on the other hand. Under this arrangement, the

23  loans that Axcess offers and makes to California consumers, including Plaintiff, are—*on paper*—

24  purportedly "issued" by the Utah bank. In fact, however, Axcess itself markets the loans,

25  underwrites the loans, originates the loans, services the loans (including billing and collection of

26  payments), and contacts borrowers who miss payments. The loans are advertised and promoted by

27  Axcess under the "Xact" brand, through channels that include (without limitation)

28  https://www.xact.com (the "Xact Website"). A copy of the landing page of the Xact Website is

1  attached hereto as Exhibit 1. A copy of the "How it Works" page of the Xact Website is attached

2  hereto as Exhibit 2. As explained there, consumers and prospective borrowers apply for loans

3  through the Xact Website, and are promised a quick decision so they can obtain funds as soon as

4  the next business day. On information and belief, CCBank has virtually no involvement in the loans

5  other than the fact that its name is used on the loan documents. Indeed, on its own website, CCBank

6  describes itself as a "community-focused financial institution, serving the banking needs of *Utah*

7  *residents*[.]" (See https://ccbankutah.com/about/overview [accessed February 24, 2023] (emphasis

8  added).)

9          13.     Under California law, identification of the true lender is based on the substance of a

10  transaction, not the form. (See, e.g., *Consumer Fin. Prot. Bureau v. CashCall, Inc.* (C.D.Cal. Aug.

11  31, 2016, No. CV 15-7522-JFW (RAOx)) 2016 U.S.Dist. Lexis 130584, at pp. *15-20.) Here,

12  Axcess has the predominant economic interest in the loans, and therefore Axcess is the true or *de*

13  *facto* lender for loans made to California consumers. Accordingly, the rent-a-bank scheme is

14  ineffective to circumvent California's interest rate limitations that apply to Axcess.

15          **PLAINTIFF'S TRANSACTION AND THE AXCESS LOAN AGREEMENT**

16          14.     On November 13, 2022, Plaintiff completed an online application through the Xact

17  Website, https://www.xact.com. After submitting the application, Plaintiff was approved for a loan

18  with a principal amount of $1,000. A true and correct copy of Plaintiff's loan agreement is attached

19  hereto as Exhibit 3 (with personal information redacted) (the "Loan Agreement").

20          15.     As stated in the Loan Agreement, Axcess set Plaintiff's interest rate at an Annual

21  Percentage Rate ("APR") of **214.41%**. Plaintiff's Loan Agreement is memorialized in a pre-printed

22  form contract. The terms of the Loan Agreement were dictated by Axcess, and Plaintiff had no

23  opportunity for negotiation or modification. On information and belief, except for the transaction-

24  specific information reflected in the Loan Agreement (e.g., Plaintiff's personal contact information,

25  the amount financed, and the specific APR), the other provisions of that Loan Agreement are

26  boilerplate terms that Axcess included in all of its agreements with California consumers.

27          16.     The Loan Agreement includes a provision entitled Notice of Arbitration Agreement;

28  Right to Reject Arbitration Agreement, which provides that the borrower has 30 days after the date

4

1 | of the Agreement to reject the Arbitration Agreement (which is set forth in the Loan Agreement) by
2 | sending a written rejection notice. (See Exhibit 3 at pp. 8-9.)

3 |      17.     Plaintiff timely rejected the Arbitration Agreement. Attached hereto as Exhibit 4 is
4 | a true and correct copy of Plaintiff's rejection notice dated December 5, 2022, addressed as specified
5 | to CCBank Arbitration Opt Out/Legal Dept, PO Box 36454, Cincinnati, OH 45236-0454. Attached
6 | hereto as Exhibit 5 is a true and correct copy of the USPS Priority Express Mail Proof of Delivery.

7 |      18.     Because Plaintiff timely rejected the Arbitration Agreement, Axcess has no right to
8 | elect arbitration with respect to Plaintiff's claims asserted herein.

9 |      19.     Pursuant to the terms of the Axcess Arbitration Agreement, borrowers who did not
10 | send a written rejection notice have the right to seek public injunctive relief in court. Moreover, by
11 | its terms, the Axcess Arbitration Agreement does not preclude those borrowers from being putative
12 | Class members in this case.

13 | **ALLEGATIONS REGARDING PUBLIC INTEREST**

14 |      20.     As explained by the California Supreme Court, injunctive relief under the UCL has
15 | "the primary purpose and effect" of prohibiting unlawful acts that threaten future injury to the
16 | general public. (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 955.) Public injunctive relief can be
17 | sought by any private individual who has suffered injury in fact and has lost money or property as
18 | a result of the unfair business practice. (*Id.* at p. 959.) On behalf of Plaintiff and the putative Class
19 | members, and for the benefit of the general public, this action seeks a public injunction to stop
20 | Axcess from advertising, making, and/or servicing loans in California that carry an unlawful interest
21 | rate, thereby enjoining future violations of California law.

22 |      21.     The Axcess business practices alleged herein threaten future injury to the general
23 | public of the State of California. Axcess directs its marketing activities for illegally-priced loans to
24 | low-income California residents, many of whom are vulnerable to exploitation. High interest rate
25 | loans trap many low-income consumers in cycles of debt, which in turn can increase the borrowers'
26 | reliance on taxpayer-funded government services. The unlawful loan pricing structure alleged herein
27 | is injurious to the general public and warrants public injunctive relief.

28 |

CLASS ACTION COMPLAINT

1    22.    Additionally, when unlicensed lenders such as Axcess charge illegal interest rates, it

2    harms the governmental interest in regulating financial institutions that do comply with California's

3    interest rate and lending laws. Licensing by the California Department of Financial Protection and

4    Innovation (formerly the California Department of Business Oversight) carries with it requirements

5    regarding net worth and surety bonds (among others), and subjects the business to audits and

6    investigations. And, of course, licensed lenders must comply with California law or be subject to

7    losing their license. In contrast, Axcess makes loans to California consumers while disregarding

8    California law regarding interest-rate limitations.

9                    **CLASS ACTION ALLEGATIONS**

10    23.    Pursuant to Code of Civil Procedure § 382, Plaintiff seeks to represent a Class

11    defined as follows: "All individuals who, during the limitations period, (a) obtained a loan in

12    California that was advertised, made, or serviced by Axcess and (b) paid interest on such loan at a

13    rate in excess of ten percent (10%). Excluded from the Class are all employees of Defendants, all

14    employees of Plaintiff's counsel, and the judicial officers to whom this action is assigned."

15    24.    Numerosity.  Plaintiff alleges on information and belief that the Class comprises at

16    least 50 individuals.

17    25.    Ascertainability.   The members of the Class may be ascertained from business

18    records maintained by Axcess and/or third parties.

19    26.    Common Questions of Fact or Law.  This action is suitable for class treatment

20    because questions of law and fact have common answers that are the same for the Class, and those

21    questions predominate over any questions affecting only individual Class members. The common

22    questions include, but are not limited to: (i) whether Axcess is the true lender on Plaintiff's and

23    Class members' loans; and (ii) whether the loans carried interest rates that exceeded the maximum

24    allowed by California law.

25    27.    Typicality and Adequacy.   Plaintiff's claim is typical of other Class members.

26    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no

27    interests that are adverse to the Class members.

28

6

CLASS ACTION COMPLAINT

1    28.    <u>Superiority</u>.   A class action is superior to other available methods for fairly and

2    efficiently adjudicating the issues. Class certification will not present any significant management

3    difficulties. Class certification would conserve judicial resources and avoid the possibility of

4    inconsistent judgments. The expense and burden of individual litigation would make it difficult for

5    individual Class members to redress the wrongs done to them without a class action. On information

6    and belief, many Class members do not know that their legal rights have been violated.

7                          **FIRST CAUSE OF ACTION**

8                                Unfair Competition

9                          (Bus. & Prof. Code, § 17200 et seq.)

10    29.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

11    30.    The Unfair Competition Law defines unfair competition as including any unlawful

12    or unfair business act or practice. (Bus. & Prof. Code, § 17200.)

13    31.    By advertising, making, and/or servicing loans in California that carry interest rates

14    exceeding the maximum rate allowed by California law, Defendants have engaged in unlawful

15    and/or unfair business acts or practices, in violation of Business and Professions Code § 17200.

16    32.    There were, and there continue to be, reasonably available alternatives to further

17    Defendants' legitimate business interests, other than the conduct described herein.

18    33.    Defendants' acts and omissions as alleged herein violate obligations imposed by the

19    California Constitution and/or statute, are substantially injurious to consumers, offend public policy,

20    and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs

21    any alleged benefits attributable to such conduct.

22    34.    Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of

23    unfair competition.

24    35.    Unless enjoined and restrained by this Court, Defendants will continue to commit

25    the violations alleged herein. Pursuant to § 17203, this action seeks injunctive relief to enjoin

26    Defendants from continuing the unlawful practices as alleged herein. Injunctive relief is sought for

27    the benefit of the general public of the State of California, including Plaintiff, Class members, and

28    all California consumers.

CLASS ACTION COMPLAINT

36.     Pursuant to § 17203, this action seeks an order granting class certification and, thereafter, restitution to Plaintiff and all Class members of all interest paid on their respective loans in excess of the amount authorized by California law. If a class is not certified, Plaintiff seeks restitution on an individual basis.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For an order certifying the Class;

2.     For restitution to Plaintiff and all Class members;

3.     For injunctive relief, including a public injunction for the benefit of the People of the State of California;

4.     For reasonable attorneys' fees, pursuant to Code of Civil Procedure § 1021.5;

5.     For costs of suit; and

6.     For such other relief as the Court deems proper.

DATED: February 24, 2023                    DOSTART HANNINK LLP

_____
ZACH P. DOSTART
Attorneys for Plaintiff

993140.5

8

CLASS ACTION COMPLAINT

Exhibit 1

       1.800.316.4220    Contact Us    LOGIN POCKET360®

An online personal loan for you —secure, long-term, and funded as soon as the next business day.[3]

**Up to $5,000***
**18-month term**[1]
**Access to FREE credit score****



# STEPS TO APPLY



## Complete a simple online application.

It's fast, easy and secure.



## Get a quick decision.

If approved, eSign and finalize your loan.



## Get your money!

Funds are deposited as soon as the next business day.[3]



Protecting your personal and financial information is one of our top priorities. We know it's important to you – and it's important to us too. We use best-in-class identity authentication solutions, so you can feel safe with Xact®.

Exhibit 1
Page 1

# WHAT IS XACT?

Xact is an online-only installment loan with larger loan amounts and longer terms, giving customers the funds they need to consolidate debt into one easy payment. The Xact Loan may also build credit.[2] We know monitoring and managing your credit score is important, when you have an Xact Loan, you get access to free credit monitoring**.

We understand that life can be challenging, and that's why the Xact Loan offers financial solutions to help you get through it. Reach out today—we'll handle tomorrow, together.

# PARTNERSHIP

CCBank, Member FDIC and Axcess Financial, partnered with a common goal of providing a financial solution that was lacking in the market to meet the needs of everyday people. By listening to the needs of customers, and through a diligent partnership, the Xact Loan was developed.

Founded in 1993, Capital Community Bank (CCBank), Member FDIC is based in Provo, Utah. Voted into the Top 100 Community Banks (2016), CCBank prides itself as a community-focused financial institution, committed to the financial well-being of their customers. CCBank provides secure, online lending, as part of that commitment, to ensure your personal and financial information stays protected. CCBank works hard to ensure customers have options that meet their needs—and that's why they teamed up with a company that has similar philosophies, and bring a new product to the market.

For more than 25 years, Axcess Financial (Cincinnati, OH) has been a financial service provider for real people. Axcess is proud to serve hardworking customers, who have experienced life's toughest moments. Through a family of brands, Axcess is committed to providing financial solutions to those who need it most.

The goal of this partnership has always been, and will always be, to put people first. Together, they don't just lend money—they lend a hand.

## GET ANSWERS

How does the Xact Loan work? What do I need to know? Get the answers to all your questions.

LEARN MORE

## FINANCE 101

Get a handle on your budget, protect yourself against scams, understand how finances work and more.

LEARN MORE

## Consumer Notice

1. Actual loan amount and terms will vary based on final evaluation and credit qualifications. Payment amounts vary by rate. The Xact® Loan is subject to a flat 18-month term. As an illustrative example, if you borrow $1,400 with a 192.77% Annual Percentage Rate (APR) and an 18-month term, your payments would be $119.42 biweekly for a total cost of $4,417.69. There are no application, origination, or pre-payment fees; late payment and returned payment fees may apply. APRs range from [145% - 225 % ]. The maximum APR on any Xact® Loan is 225%. APRs will vary depending on credit qualifications and loan amount.

2. Payments must be made on time in order to enhance credit with lender.

3. Approval depends upon meeting legal, regulatory and underwriting requirements. All times and dates are based on Eastern Time (ET). If your loan is approved and originated by 8:00 p.m. ET on a business day, your funds will typically become available on the next business day. The lender may, at their discretion, verify application information by using national databases that may provide information from one or more national credit bureaus, and the lender may take that into consideration in the approval process.

4. Availability restrictions apply.

5. Access to PocketPerks™ cash back rewards requires additional sign-up with third-party service provider. The Xact® Loan is an installment loan originated and funded by Capital Community Bank a Utah Chartered bank located in Provo, UT, Member FDIC.

* Xact loans to California residents have a maximum amount financed of $2,400.

Exhibit 1
Page 2

**Transunion CreditView Dashboard is a third party provided service. The material has not been modified or validated by Xact.*

Notice to California consumers: Information on your privacy rights under the California Consumer Privacy Act can be found by clicking here.

Notice to Alabama, Alaska, Arkansas, Arizona, California, Delaware, Florida, Hawaii, Idaho, Indiana, Kansas, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, Washington, Wisconsin and Wyoming Customers: Xact Installment loans are originated by Capital Community Bank, a Utah chartered bank, located in Provo, UT, Member FDIC.

South Carolina Consumer Disclosure
Information on the California Consumer Privacy Act
Do Not Sell or Share My Personal Information ✓✕

PRIVACY POLICY  |  TERMS & CONDITIONS  |  PRIVACY POLICY CCPA  |  PRIVACY NOTICE AFS  |  PRIVACY NOTICE CCB

© 2023 Xact®.  All rights reserved.  PO Box 36454, Cincinnati, OH 45236-0454

Contact Us

800.316.4220

PO Box 36454
Cincinnati, OH 45236-0454

Xact Customer Service Hours:
All times Eastern Time (ET)
Monday–Friday: 8 a.m.–6 p.m.
Saturday and Sunday: CLOSED

Exhibit 1
Page 3

Exhibit 2

2/22/23, 5:40 PM

How Installment Loans Work | Xact



# HOW IT WORKS

Applying for the Xact loan is simple and secure. In just a few easy steps, you could have the money you need deposited directly into your bank account, as soon as the next business day.



## Complete a simple online application.

It's fast, easy and secure.



## Get a quick decision.

If approved, eSign and finalize your loan.



## Get your money!

Funds are deposited as soon as the next business day.[3]



Get started now with our simple and secure application process.

**Here's what you will need to apply:**

- Valid ID
- Income information
- Working phone number
- Active checking account, must be active for at least 30 days.

Exhibit 2
Page 4

# MANAGING YOUR ONLINE LOAN

Pocket360™ is a secure, online tool to help safely manage your account. You can view your account, make monthly payments, and get cash back rewards.[4, 5] Check out our video to see the benefits of P360.



How to enroll in Pocket360®





Free credit score monitoring with your Xact Installment Loan. When you log in to Pocket360, you'll have access to the Transunion CreditView Dashboard, so you can monitor and manage your credit.

Exhibit 2
Page 5

1. Instantly check your TransUnion Credit Score for free.
2. Receive free credit alerts.
3. Make sure your credit is moving forward – just like you.



# TransUnion ®  |  CreditView™ Dashboard

### Consumer Notice

1. Actual loan amount and terms will vary based on final evaluation and credit qualifications. Payment amounts vary by rate. The Xact® Loan is subject to a flat 18-month term. As an illustrative example, if you borrow $1,400 with a 192.77% Annual Percentage Rate (APR) and an 18-month term, your payments would be $119.42 biweekly for a total cost of $4,417.69. There are no application, origination, or pre-payment fees; late payment and returned payment fees may apply. APRs range from [145% - 225 % ]. The maximum APR on any Xact® Loan is 225%. APRs will vary depending on credit qualifications and loan amount.

2. Payments must be made on time in order to enhance credit with lender.

3. Approval depends upon meeting legal, regulatory and underwriting requirements. All times and dates are based on Eastern Time (ET). If your loan is approved and originated by 8:00 p.m. ET on a business day, your funds will typically become available on the next business day. The lender may, at their discretion, verify application information by using national databases that may provide information from one or more national credit bureaus, and the lender may take that into consideration in the approval process.

4. Availability restrictions apply.

5. Access to PocketPerks™ cash back rewards requires additional sign-up with third-party service provider.
   The Xact® Loan is an installment loan originated and funded by Capital Community Bank a Utah Chartered bank located in Provo, UT, Member FDIC.

\* Xact loans to California residents have a maximum amount financed of $2,400.

\*\*Transunion CreditView Dashboard is a third party provided service. The material has not been modified or validated by Xact.

Notice to California consumers: Information on your privacy rights under the California Consumer Privacy Act can be found by clicking here.

Notice to Alabama, Alaska, Arkansas, Arizona, California, Delaware, Florida, Hawaii, Idaho, Indiana, Kansas, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, Washington, Wisconsin and Wyoming Customers: Xact Installment loans are originated by Capital Community Bank, a Utah chartered bank, located in Provo, UT, Member FDIC.

South Carolina Consumer Disclosure
Information on the California Consumer Privacy Act
Do Not Sell or Share My Personal Information  ☑✖

---

PRIVACY POLICY  |   TERMS & CONDITIONS  |   PRIVACY POLICY CCPA  |  PRIVACY NOTICE AFS  |   PRIVACY NOTICE CCB

© 2023 Xact®.  All rights reserved.  PO Box 36454, Cincinnati, OH 45236-0454

Contact Us

800.316.4220

P.O. Box 36454
Cincinnati, OH 45236-0454

Xact Customer Service Hours:
All times Eastern Time (ET)
Monday–Friday: 8 a.m.–6 p.m.
Saturday and Sunday: CLOSED

Exhibit 2
Page 6

Exhibit 3

| Capital Community Bank | **Applicant** | | **Report ID:** | **Date** |
|---|---|---|---|---|
| 7755 Montgomery Rd. | Lakisha Cole Linton | | RiskNoticeB4 | 11/13/2022 |
| Cincinnati, OH 45236 | **REDACTED** | | -v-Rev3-2018 | |

| **Your Credit Score** | | | |
|---|---|---|---|
| **Your Credit Score** | Source: LexisNexis | | Date: 11/13/2022 |

| **Understanding Your Credit Score** | |
|---|---|
| **What you should know about credit scores.** | A credit score is a number that reflects the information in your credit report.<br><br>A credit report is a record of your credit history. It includes information about whether you pay your bills on time and how much you owe your creditors.<br><br>A credit score can change, depending on how a consumer's credit history changes. |
| **How we use your credit score** | Your credit score can affect whether you get a loan and how much you will have to pay for that loan. |
| **The range of scores** | Scores range from a low of 500 to a high of 900. Generally, the higher your score, the more likely you are to be offered better credit terms. |
| **How your score compares to scores of other consumers** | Your credit score ranks higher than 29% of consumers.<br><br>**% of Consumers with Scores in a particular range** |

| 7% | 8% | 14% | 19% | 20% | 16% | 9% | 7% |
|---|---|---|---|---|---|---|---|
| 500-520 | 521-540 | 541-560 | 561-580 | 581-600 | 601-620 | 621-640 | 641-900 |

| **Checking your Credit Report** | |
|---|---|
| **What if there are mistakes in your credit report?** | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency.<br><br>It is a good idea to check your credit report to make sure the information it contains is accurate. |
| **How can you obtain a copy of your credit report?** | Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year:<br><br>To order your free annual credit report –<br><br>*By telephone:*   Call toll-free: 1-877-322-8228<br><br>*On the web:*   Visit www.annualcreditreport.com<br><br>*By the mail:*   Mail your completed Annual Credit Report Request For, (which you can obtain from the Federal Trade Commission's web site at http://www.ftc.gov/bcp/conline/include/requestformfinal.pdf) to:<br><br>Annual Credit Report Request Service<br>P.O Box 105281<br>Atlanta, GA 30348-5281 |
| **How can you get more information about credit reports?** | For more information about credit reports and your rights under federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore/. |

Exhibit 3
Page 7

XACT INSTALLMENT LOAN AGREEMENT

**CONSUMER**

Name: Lakisha Cole Linton

Street Address: **REDACTED**

City and State:

Telephone:

Customer Identification No:

**LENDER***

Capital Community Bank

Telephone: 1-800-316-4220

*Capital Community Bank ("CCBank") is the lender of this loan. Axcess Financial Services, Inc. ("Axcess") acts as a servicer on this account. If you have questions, please contact CCBank Customer Support (800) 316-4220

| FEDERAL TRUTH-IN-LENDING STATEMENT | | | |
|---|---|---|---|
| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate | **FINANCE CHARGE** The dollar amount the credit will cost you. (e) | **AMOUNT FINANCED** The amount of credit provided to you or on your behalf | **TOTAL OF PAYMENTS** The amount you will have paid after you have made all payments as scheduled |
| 214.41% | $2,137.27 | $1,000.00 | $3,137.27 |

Your Payment Schedule will be:
1 payment of $184.54 on 12/09/2022
15 Monthly payments of $184.54 beginning 01/09/2023
1 payment of $184.63 on 04/09/2024

Security: If you selected EFT your authorization may be considered the security for this loan.

Late Charge: If a payment is at least 10 days past due, you have to pay us a late fee of $15.00 or 5%, whichever is greater. We may collect one delinquency fee per installment.

Prepayment: If you pay off early you will not have to pay a penalty
See your contract documents for any other information about nonpayment, default, and any required repayment in full before the scheduled date.
(e) means estimate *

**FUNDS AVAILABILITY**

*The Loan Date is the date you electronically sign this Agreement. Funds usually will be made available to you on the first banking day after the Loan Date (the "Funds Availability Date"). The APR in the Truth-In-Lending Statement is calculated using the Funds Availability Date. Banking day is usually based on the date you sign this Agreement. Banking date considers after hour loans, weekends, and banking holidays. For example, an agreement signed after 8p.m. (EST) won't fund for two banking days after its signed.

**METHOD OF REPAYMENT**

ELECTRONIC FUND TRANSFER ("EFT") AUTHORIZATION. If you chose to pay by EFT funds may be withdrawn from your account as soon as the same day. You understand it's your right to receive notice of EFT withdrawals that differ from amounts agreed to. You also understand you agree to receive notice only when the draft amount falls outside the range of amounts in your payment schedule. You will receive notice if the draft is more than an installment payment plus $75.00. If there's a mistake withdrawing money from your account you allow us to fix the mistake by using an EFT's to put money back in your account.

Also, you allow us or our agent to use one or more electronic debit entries to your bank account to collect the amounts you owe us under the payment schedule disclosed on page 1 of this loan agreement. These withdraws may include, but are not limited to, automated clearing house (ACH) entries, and remotely created checks (RCC). Withdraws initiated to your bank account will generally post on an installment's scheduled due date. You additionally allow us to electronically debit your bank account to collect dishonored item fees; each dishonored item fee is $25.00.

In the event of default, or if you fail to make a payment when the payment is due we may continue to initiate accelerated-balance EFT's in amounts less than the full amount due until any past due amounts you owe are paid in full. The debits will be equal to or less than the installment payments listed in the Agreement. These debits will occur on future dates(s) on which you receive regular installments of income.

If you believe there has been an unauthorized EFT contact CCBank customer service at (800) 316-4220 Monday through Friday 8am-5pm (EST).

You may revoke your EFT Authorization at any time during this Agreement. Your revocation of the authorization does not constitute a default under this Agreement. To revoke you must send written notice at least three business (3) days prior to a scheduled installment payment for us to be able to reasonably act upon the revocation. To revoke send notice to Attn: CCBank Customer Support, ACH Opt Out, PO Box 36454, Cincinnati, OH 45236-0454.

**ITEMIZATION OF AMOUNT FINANCED**

| | |
|---|---|
| 1. Amount paid directly to you | $1,000.00 |
| 2. Amount credited to your account with us | $0.00 |
| 3. Total Amount Financed (the sum of 1 and 2) | $[[formatNumber(1000.0, '2', '.', ',')]] |

**LOAN REFERENCE**

Loan Date: 11/13/2022
Loan Number:

NOTICE OF ARBITRATION AGREEMENT; RIGHT TO REJECT ARBITRATION AGREEMENT

Before signing this Agreement, you should carefully review the Arbitration Agreement located on page 3. The Arbitration Agreement provides that all Claims arising from or relating to this Agreement or any other agreement that you and we have ever entered into must be resolved by binding arbitration if the person or entity against whom a Claim is asserted elects to arbitrate the Claim. Thus, if the person or entity against whom you assert a Claim elects to arbitrate the Claim, then you will not have the following important rights:

➢ You may not file or maintain a lawsuit in any court except a small claims court.

➢ You may not join or participate in a class action, act as a class representative or a private attorney general, or consolidate your Claim with the claims of others.

➢ You give up your right to have a jury decide your Claim.

➢ You will have to pay the arbitration firm certain fees in order to commence an arbitration proceeding unless you ask us to pay those fees to the arbitration firm for you.

➢ You will not be afforded the procedural, pre-trial discovery, and appellate rights in an arbitration proceeding that you would enjoy in a court or judicial proceeding. If you do not want to arbitrate all Claims as provided in the Arbitration Agreement, then you have the right to reject the Arbitration Agreement. To reject you must deliver written notice to us at the following address within 30 days following the date of this Agreement.

Exhibit 3
Page 8

**To reject Arbitration send written notice to Attn: CCBank Arbitration Opt-Out/Legal Dept, PO Box 36454, Cincinnati, OH 45236-0454. Nobody else can reject arbitration for you; this method is the only way you can reject the Arbitration Agreement. Your rejection of the Arbitration Agreement will not affect your right to credit, how much credit you receive, or any contract term other than the Arbitration Agreement.**

You should carefully review this entire Agreement, including the Definitions, Terms, and Conditions located on page 2 and 3, and the Arbitration Agreement and the Notice-of-Grievance Agreement located on page 3. By signing below, you agree to every provision contained in this three-page Agreement

1. DEFINITIONS
   - ➢ We, our, and us each means Capital Community Bank ("CCBank"), XACT, and/or servicer Axcess, and you and your each means the consumer identified on page one.
   - ➢ Agreement means this Installment Loan Agreement, and this loan means the loan that we make to you on this date.
   - ➢ Your Payment Item means any electronic funds transfer that we submit to your bank if you have voluntarily authorized an Electronic Funds Transfer. Because applicable federal law and state law do not clearly address whether our interest in your EFT authorization is a "security interest" for Truth-In-Lending purposes (TIL), we have pursuant to Comment 2(a)(25) of the Federal Reserve Board Official Staff Commentary to Regulation Z § 1026.2 – disclosed in the TIL Statement that your EFT authorization is "security" for this loan; we make this disclosure for Truth-in-Lending purposes only.
   - ➢ Your bank and your bank account mean, respectively, the bank and the bank account that you identify in your application for this loan.
   - ➢ Finance Charge, Amount Financed, and Total of Payments mean the respective amounts identified in the Federal Truth-In-Lending (TIL) Statement disclosed on page 1.
   - ➢ Installment due date means each date identified in the TIL Statement on which an installment payment is due.
   - ➢ This date refers to the date on which you and we sign this Agreement.

2. Promise To Pay. You promise to pay us the Amount Financed plus interest on the unpaid principal balance of this loan. We will begin charging interest on this date. We calculate interest on a daily basis by multiplying the daily rate times the unpaid principal balance of this loan. We figure the daily rate by dividing our contract interest rate of 215.00% by 365. You must pay each installment on its due date. We apply your payments first to any outstanding balance, unpaid fees, interest (accrued as of the date the payment is received), then to principal (due as of the date the payment is received), and then to any other charges you owe us.

3. PREPAYMENT. You have the right to prepay this loan at any time without penalty.

4. LATE FEE, DISHONORED FEE, AND NSF FEE. If your Bank dishonors a payment item for any reason, then you must pay us either a dishonored fee or non-sufficient funds ("NSF") fee in the amount of $25.00. We will charge and collect no more than one dishonored item fee or NSF fee per installment. If a payment is late 10 or more days, then you must pay us a delinquency fee of $15.00 or 5% of the payment, whichever is greater. We may collect only one delinquency fee per installment.

5. EVENTS OF DEFAULT. We may declare default if you fail to pay an installment when it is due. If you default, then all money owing under this Agreement becomes immediately due and payable. By failing to accelerate the balance of this loan in one instance of your default, we do not waive any right or remedy we may have in a later instance of your default. You are in default of this Agreement if you file for bankruptcy. Considering the Agreement in default does not hinder or limit your ability to proceed with bankruptcy matters.

6. GOVERNING LAW. Except for the Arbitration Agreement attached hereto, which shall be governed by the Federal Arbitration Act (see Section 6 of the Arbitration Agreement), this Agreement shall be governed by the laws of the State of Utah.

7. ATTORNEY'S FEES. If you default under this Agreement, then you may be responsible to pay the reasonable attorney's fees that we incur enforcing the terms of this Agreement; provided, however, that in no event may the amount of those attorney's fees exceed 15% of the unpaid debt after default and referral of the Agreement to an attorney who is not a salaried employee of us.

8. AUTHORIZATION TO SERVICE LOAN. Prior to an installment due date, you authorize us to call or text you during reasonable hours at home or work to remind you of the due date. Until you pay this loan in full, you further authorize us to obtain your bank account information to determine whether funds are available to pay an installment that is due. Finally, if you default on this Agreement, then you authorize us to call you at the home or work phone numbers listed in your credit application (during reasonable hours and subject to your right to instruct us not to call you), to leave a message with a person or voice-mail service at either location stating our name and phone number, to write you at home, and to acquire location information about you from the personal contacts whom you identify in your credit application.

9. PRIVACY STATEMENT. You acknowledge that you have received a copy of our privacy statement either on this date or within the last 12 months.

10. IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

11. AFFIRMATIVE CONSENT TO RECEIVE MARKETING E-MAILS, TEXTS AND PHONE CALLS. During your application you voluntarily authorized us to send you marketing e-mail messages to the following e-mail address: **REDACTED**
You also authorized us to initiate marketing text messages, auto-dialed calls, pre-recorded calls, or live phone calls to the following phone number(s), including any mobile phone numbers(s) you have now or in the future:
You acknowledge that we did not condition your eligibility for this transaction on your agreement to provide the consent described in this paragraph. To opt-out of providing the consent described in this paragraph you must send written notice to: CCBank Marketing Opt Out, PO Box 36454, Cincinnati, OH 45236-0454.

12. REVOCATION OF PAYMENT ITEM. You may revoke your EFT Authorization at any time. Your revocation of the authorization does not constitute a default under this Agreement. To revoke you must send written notice at least three business (3) days prior to a scheduled installment payment for us to be able to reasonably act upon the revocation. To revoke send notice to Attn: CCBank, ACH Opt Out, PO Box 36454, Cincinnati, OH 45236-0454.

13. NOTICE OF FURNISHING NEGATIVE INFORMATION. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

14. DISPUTES. To dispute information about your loan agreement you must submit your dispute in writing to CCBank Support, PO Box 36454, Cincinnati, OH 45236-0454. You must include your first and last name, last four of social, date of birth, current address, and phone number along with the facts of the dispute including dates, documents, or other material.

15. RIGHT OF RESCISSION. You may rescind this Agreement at no cost by notifying CCBank Customer Support within one calendar day of originating the loan. CCBank will submit a debit transaction for the principal amount of the loan. If your debit returns for any reason then the Agreement continues as if the rescission did not occur.

**The Installment Loan Agreement is the final expression of the credit agreement between the parties and it may not be contradicted by evidence of an alleged oral agreement.**

Consumer:
Signature: /s/ Lakisha Cole Linton

Exhibit 3
Page 9

ARBITRATION AGREEMENT

1.DEFINITION OF CLAIM. Claim means any claim, dispute, or controversy arising from or relating to this Agreement, this Transaction, any other agreement or transaction that you and we have ever entered into or completed, or any other conduct or dealing between you and us. A court or arbitrator interpreting the scope of this Arbitration Agreement should broadly construe the meaning of Claim so as to give effect to your and our intention to arbitrate any and all claims, disputes, or controversies that may arise between you and us. Consistent with this broad construction, Claim includes (but is not limited to) each of the claims, disputes, or controversies listed below.

> A Claim includes any dispute or controversy regarding the scope, validity, or enforceability of this Arbitration Agreement. For example, a Claim includes any assertion   by you or us that this Arbitration Agreement is unenforceable because applicable usury, lending, or consumer protection laws render the underlying Transaction void or unenforceable. A Claim also includes any assertion by you or us that this Arbitration Agreement is unenforceable because it lacks fairness or mutuality of obligations, conflicts with bankruptcy or other federal laws, improperly limits your or our remedies for the other's violation of laws, or unduly restricts your or our access to the court system. Finally, a Claim includes any assertion by you or us that this Arbitration Agreement is unenforceable because you or we did not receive notice of or understand its provisions, you or we need to discover the filing fees or administrative costs associated with commencing an arbitration proceeding, or you or we believe the arbitration firm or the arbitrator will be unfair or biased.
> A Claim includes any claim that you assert against a person or entity related to us – including our parent company, servicing company, affiliated companies, directors, officers, employees, agents, and representatives – and any claim that we assert against a person or entity related to you. For the purpose of this Arbitration Agreement, references to we, our, and us and references to you and your include such related persons or entities.  You and we agree that these related persons and entities may elect   to arbitrate any Claim asserted against them even though they have not signed this Arbitration Agreement.
> A Claim includes any statutory, tort, contractual, or equitable (i.e., non-monetary) claim. For example, a Claim includes any claim arising under the following: a federal or state statute, act, or legislative enactment; a federal or state administrative regulation or rule; common law (i.e., non-statutory law based on court cases); a local ordinance or zoning code; this Agreement or another contract; a judicial or regulatory decree, order, or consent agreement; or any other type of law.
> A Claim includes (but is not limited to) any claim based on your or our conduct before you and we consummated this Transaction. For example, a Claim includes any dispute or controversy regarding our advertising, application processing, or underwriting practices, our communication of credit decisions, or our provision of cost-of- credit or other consumer protection disclosures.
> A Claim includes any request for monetary damages or equitable remedies, whether such request is asserted as a claim, counterclaim, or cross-claim.

2. MANDATORY ARBITRATION UPON ELECTION. Subject to your right to reject arbitration (explained on page 2 of this Agreement) and subject to the small claims court exception (explained below), you and we agree to arbitrate any Claim if the person or entity against whom a Claim is asserted elects to arbitrate the Claim.

**Consequently, if the person or entity against whom a Claim is asserted elects to arbitrate the Claim, then neither you nor we may file or maintain a lawsuit in any court except a small claims court and neither you nor we may join or participate in a class action, act as a class representative or a private attorney general, or consolidate a Claim with the claims of others.** A person or entity against whom a Claim is asserted may elect to arbitrate the Claim by providing oral or written notice to the person asserting the Claim (i.e., the claimant). Such notice need not follow any particular format but must reasonably inform the claimant that arbitration has been elected. For example, if you or we file a lawsuit against the other, then the other provides sufficient notice if the other orally informs the claimant that the other elects to arbitrate the Claim or if the other files a pleading (i.e., a document filed in court) requesting the court to stay (i.e., freeze) the court case and refer the Claim to arbitration.

3. SMALL CLAIMS COURT EXCEPTION. You and we may ask a small claims court to decide a Claim so long as no party to the small claims court lawsuit seeks to certify a class, consolidate the claims of multiple persons, or recover damages beyond the jurisdiction of the small claims court.  If you file a small claims court lawsuit against us, then we lose the right to elect arbitration of your Claim (but not of other persons' Claims). In contrast, if we file a small claims court lawsuit against you, then you retain the right to elect arbitration of our Claim.

4. ARBITRATION FIRM. The American Arbitration Association ("AAA") (1-800-778-7879, www.adr.org) will administer the arbitration of Claims. The AAA will normally apply its Consumer Arbitration Rules then in effect to a Claim but may apply other types of procedural rules – such as the AAA's Commercial Arbitration Rules then in effect – if a party to the arbitration proceeding demonstrates that the application of such other procedural rules is appropriate. No matter what the arbitration firm's procedural rules provide, you and we agree that the arbitrator must issue a written decision and may award any type of remedy – including punitive damages and equitable relief – that a court or jury could award if the Claim were litigated. **You and we also agree that an arbitration firm may not arbitrate a Claim as a class action or otherwise consolidate the Claims of multiple persons.** You may request a copy of the AAA's Consumer Arbitration Rules and other procedural rules at the toll-free phone number or URL (universal resource locator) identified above. If you object to the AAA as the arbitration firm or if the AAA is unavailable, then the parties may agree to select a local arbitrator who is a retired judge or a registered arbitrator in good standing with an arbitration firm, provided that such local arbitrator must enforce all the terms of this arbitration agreement, including the class-action waiver. **The parties may not select a local arbitrator who refuses to enforce this arbitration agreement, including the class action waiver, because you and we waive any right to arbitrate a Claim on a class-action, representative-action, or consolidated basis.** When attempting to contact AAA or another arbitration firm, please recognize that phone numbers and URLs change frequently; you may need to update the contact information provided above  with your own research.

5. PAYMENT OF ARBITRATION FEES; SELECTION OF FORUM. If you file a Claim with the AAA or another arbitration firm, the firm will usually ask you to pay a filing fee and may also ask you to pay in advance for some of the expenses the firm will incur when administering the arbitration proceeding. Upon your written request, we will pay to the arbitration firm any fees or advance administrative expenses that the arbitration firm requires you to pay as a condition to your filing a Claim with the Firm. Additionally, we will pay any fees or expenses the arbitration firm charges for administering the arbitration proceeding, any fees or expenses the individual arbitrator or arbitrators charge for attending the arbitration hearing, and any fees a court charges you to file a lawsuit appealing the arbitration decision. We will pay these fees and expenses whether or not you prevail in the arbitration proceeding. Finally, we agree to hold the arbitration proceedings in the county of your residence or in any different location in the United States of your choice.

6. GOVERNING LAW. You and we acknowledge that this Transaction involves interstate commerce. Accordingly, you and we agree that both the procedural and   the substantive provisions of the Federal Arbitration Act, 9 USC §§ 1-16, govern the enforcement, interpretation, and performance of this Arbitration Agreement. Any court with jurisdiction may enforce this Arbitration Agreement. Additionally, any court with jurisdiction may enforce an arbitration decision rendered under this Arbitration Agreement if that arbitration decision has been properly registered as a judgment.

7. SURVIVAL; BINDING EFFECT; SEVERABILITY. You and we retain the right to invoke this Arbitration Agreement and to compel the arbitration of Claims even after your and our respective obligations under this Agreement have been completed, defaulted, rescinded, or discharged in bankruptcy. This Arbitration Agreement binds the heirs, successors, and assigns – including any bankruptcy trustee – of both you and us. Finally, if a court or arbitrator determines that any part of this Arbitration Agreement is unenforceable, then you and we agree that the court or arbitrator must fully enforce the remaining provisions that have not been invalidated.

8. EXCEPTION FOR CLAIMS FOR PUBLIC INJUNCTIVE RELIEF. You or we may, but are not required to, submit claims for public injunctive relief under California or federal statutes that specifically provide for such relief to arbitration under this Arbitration Agreement. Such a claim is referred to in this Arbitration Agreement as a "Public Issue." In the event that either you or we bring an action against the other that raises a Public Issue, that Public Issue shall be severed from all other issues, including damages or equitable remedies, and the proceedings relating to the Public Issue shall be stayed until the other issues are resolved by arbitration. Then, the proceedings relating to the Public Issue shall be recommenced, and any findings of fact or law decided by the arbitrator(s) shall be considered by the court but shall not be dispositive as to the Public Issue. In the event that either you or we elect pursue such a claim through court proceedings, all other claims between us shall remain subject to the provisions of this Arbitration.

Exhibit 3, Page 10

NOTICE-OF-GRIEVANCE AGREEMENT

If the person or entity against whom a Claim is asserted declines to arbitrate the Claim or if a court or arbitrator determines that the above Arbitration Agreement is unenforceable, then you and we agree that neither you nor we may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from or relates to a Claim until the claimant has provided the other party written notice of the asserted Claim and afforded the other party a reasonable period after the giving of the written notice to take corrective action. If applicable law provides a time period which must elapse before certain action can be taken, then that time period will be deemed reasonable for the purpose of the preceding sentence.

By signing below, you and we agree to the Arbitration Agreement and the Notice-of-Grievance Agreement, each of which is set forth above.

Consumer:
Signature: /s/ Lakisha Cole Linton
Date: [[formatDateTime('current-date', 'm/d/Y')]]

Exhibit 3
Page 11

CONSENT FOR ELECTRONIC RECORDS

Please read this information carefully and, for future reference, either print a copy of this document or retain this information electronically.

1.    INTRODUCTION. You are submitting a credit application to Capital Community Bank of Utah (CCBank) and Axcess Financial as Servicer for CCBank. We can give you the benefits of our on line service only if you consent to use and accept electronic signatures, electronic records, and electronic disclosures in connection with this transaction (your "Consent"). By completing and submitting an online credit application (your "Application"), you acknowledge that you have received this document and have consented to the use of electronic signatures, electronic record, and electronic disclosures in connection with this transaction (collectively "Records").

2.    ELECTRONIC COMMUNICATIONS. You may request a paper copy of any Record by e-mailing: customerservice@xact.com. You may request a paper copy even if you withdraw your Consent. We will retain the Records as required by law and will provide you a paper copy of any Record at no charge.

3.    CONSENTING TO DO BUSINESS ELECTRONICALLY. Before giving your Consent, you should consider whether you have the required hardware and software capabilities described below.

4.    SCOPE OF CONSENT. Your Consent and our agreement to conduct this transaction electronically only apply to this transaction. If we receive your Consent, then we will conduct this transaction with you electronically.

5.    HARDWARE AND SOFTWARE REQUIREMENTS. To access and retain the Records electronically, you will need to use the following computer software and hardware: A PC, Mac, Android or iOS device with the latest version of Google Chrome, Mozilla Firefox, Apple Safari, Internet Explorer or Microsoft Edge. To read some documents, you will need a PDF file reader like Adobe Acrobat Reader. If at any time during this transaction these requirements change in a way that creates a material risk that you may not be able to receive records electronically, we will notify you of these changes.

6.    WITHDRAWING CONSENT. You may withdraw your Consent at any time and at no charge to you. If you withdraw your Consent prior to receiving the credit transaction, then your withdrawal will prevent you from obtaining an online credit transaction (i.e., a credit transaction obtained over the Internet). To withdraw your Consent, you must e-mail us at: customerservice@xact.com. Note, however, that the withdrawal of your Consent will not affect the legal effectiveness, validity, or enforceability of the credit transaction or of any Records that you received electronically prior to such withdrawal (including but not limited to the Arbitration Agreement and the Notice-of-Grievance Agreement, each set forth above).

7.    CHANGE TO YOUR CONTACT INFORMATION. You must keep us informed of any change in your e-mail address or your ordinary mail address. To update your address information, either phone us at 1-800-316-4220 or e-mail us at customerservice@xact.com.

8.    AUTHORIZATION, AGREEMENT, AND REPRESENTATIONS. BY CLICKING THE "I AGREE" BUTTON BELOW, YOU CONSENT TO USE AND ACCEPT ELECTRONIC SIGNATURES, ELECTRONIC RECORDS, AND ELECTRONIC DISCLOSURES IN CONNECTION WITH THIS TRANSACTION. YOU ACKNOWLEDGE THAT YOU CAN ACCESS THE RECORDS IN THE DESIGNATED FORMATS DESCRIBED ABOVE, AND YOU UNDERSTAND THAT YOU MAY REQUEST A PAPER COPY OF THE RECORDS AT ANY TIME AND AT NO CHARGE. IF YOU DO NOT GIVE YOUR CONSENT OR IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS DESCRIBED IN THIS DOCUMENT, THEN CLICK THE "I DO NOT AGREE" BUTTON BELOW.
Rev. 03/20

Exhibit 3
Page 12

 CCBank

| **FACTS** | **WHAT DOES CAPITAL COMMUNITY BANK DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>■ Social Security number; account balances<br>■ payment history; transaction or loss history<br>■ credit history; overdraft history<br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Capital Community Bank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Capital Community Bank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** — such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** — to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** — information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes** — information about your creditworthiness | No | We don't share |
| **For affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| Questions? | Call **801-356-6699** or go to **www.ccbankutah.com** |
|---|---|

Exhibit 3
Page 13

 CCBank

| **PAGE 2** | |
|---|---|
| **Who we are** | |
| **Who is providing this notice?** | Capital Community Bank, Inc. |
| **What we do** | |
| **How does Capital Community Bank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
| **How does Capital Community Bank collect my personal information?** | We collect your personal information, for example, when you<br><br>▪ apply for a loan; give us your contact information<br>▪ give us your income information; show your government-issued ID<br>▪ provide employment information<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>▪ sharing for affiliates' everyday business purposes – information about your creditworthiness<br>▪ affiliates from using your information to market to you ▢ sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| **Definitions** | |
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>▢ *Capital Community Bank does not share with our affiliates.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>▢ *Capital Community Bank does not share with nonaffiliates so they can market to you.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>▢ *Our joint marketing partners include card issuers, insurance providers, and other financial institutions.* |
| **Other important information** | |

Capital Community Bank is chartered under the laws of the State of Utah and is subject to regulatory oversight by the FDIC. The most current copy of the privacy statement is available at www.ccbankutah.com

California Customers: In accordance with California law, we will not share information we collect about California residents with companies outside of California except as permitted by law, such as with the consent of the customer, to service the customer's accounts, or to fulfill on rewards or benefits. We will limit sharing among our companies to the extent required by applicable California law.

Nevada Customers: We are providing you this notice pursuant to state law. If you would like more information about this notice call us at our toll free number or email address included in this notice or the Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington Street, Suite 3900, Las Vegas, NV 89101; Phone number – 702.486.3132; e-mail: BCPINFO@ag.state.nv.us.

Exhibit 3
Page 14

| **FACTS** | **WHAT DOES AXCESS FINANCIAL SERVICES DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number; account balances<br>• payment history; transaction or loss history<br>• credit history; overdraft history |
| **How?** | All financial companies need to share consumers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their consumers' personal information; the reasons Axcess chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Axcess share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** — such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** — to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** — information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** — information about your creditworthiness | Yes | Yes |
| **For affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

| To limit our sharing | • Call 800-316-4220<br>• Visit us online: www.xact.com or<br>• Mail the form below<br>**Please note:**<br><br>If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing |
|---|---|
| **Questions?** | Call **800-316-4220** or go to **www.xact.com** |

Exhibit 3
Page 15

**Mail-in Form**

Mark any/all you want to limit:

☐ Do not share information about my creditworthiness with your affiliates for their everyday business purposes.
☐ Do not allow your affiliates to use my personal information to market to me.
☐ Do not share my personal information with nonaffiliates to market their products and services to me.

| Name | |
| Address | |
| City, State, Zip | |
| Account# | |

| Mail To: | Attn: Customer Service - Opt Out<br>PO Box 36454<br>Cincinnati, OH 45236-0454 |

---

**PAGE 2**

### Who we are

| Who is providing this notice? | CNG Holdings, Inc., and each of its affiliates doing business as Axcess Financial Services, Inc. |

### What we do

| How does Axcess protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
| How does Axcess collect my personal information? | We collect your personal information, for example, when you<br><br>▪ apply for a loan; give us your contact information<br><br>▪ give us your income information; show your government-issued ID<br><br>▪ provide employment information<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br><br>▪ sharing for affiliates' everyday business purposes – information about your creditworthiness<br><br>▪ affiliates from using your information to market to you<br><br>▪ sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account |

### Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>▪ Our affiliates include companies doing business as CNG Holdings, Inc., Allied Cash Advance, Check 'n Go, Axcess Credit, Tempoe, SmartPay, and related holding and back-office service companies |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies. |

Exhibit 3, Page 16

| | |
|---|---|
| | • Nonaffiliates we share with can include debit card companies, banks, check cashing service companies, money transfer companies, data research firms and other financial institutions |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | • Our joint marketing partners include debit card companies, money transfer companies and other financial institutions. |

## Other important information

This notice is provided by CNG Holdings, Inc. and its affiliates doing business as Axcess Financial Services, Inc. Check 'n Go and Allied Cash Advance, including: Southwestern & Pacific Specialty Finance, Inc.; Great Lakes Specialty Finance, Inc.; Southern Specialty Finance, Inc.; Great Plains Specialty Finance, Inc.; Eastern Specialty Finance, Inc.; Check 'n Go of Florida; Allied Cash Advance Arizona, LLC; Allied Cash Advance California, LLC; Allied Cash Advance Indiana, LLC; Allied Check Cashing Michigan LLC; and Allied Title Lending, LLC.

California Customers: In accordance with California law, we will not share information we collect about California residents with companies outside of California except as permitted by law, such as with the consent of the customer, to service the customer's accounts, or to fulfill on rewards or benefits. We will limit sharing among our companies to the extent required by applicable California law.

Nevada Customers: We are providing you this notice pursuant to state law. If you would like more information about this notice call us at our toll free number or email address included in this notice or the Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington Street, Suite 3900, Las Vegas, NV 89101; Phone number – 702.486.3132; e-mail: BCPINFO@ag.state.nv.us.

Exhibit 3
Page 17

Exhibit 4

LAKISHA COLE LINTON
[REDACTED]

December 5, 2022

**VIA EXPRESS MAIL**

CCBank Arbitration Opt-Out/Legal Dept.
P.O. Box 36454
Cincinnati, Ohio 45236-0454

      Re:    Notice of Rejection of Arbitration Agreement
             Loan Number:
             Loan Date: November 13, 2022

To Whom It May Concern:

My name is Lakisha Cole Linton. This letter is regarding the XACT Installment Loan Agreement dated November 13, 2022, Loan No. [Redacted]  (the "XACT Installment Loan Agreement"). My home address is [Redacted]

This letter constitutes written notice that I reject the Arbitration Agreement set forth in the XACT Installment Loan Agreement.

Sincerely,

Lakisha Cole Linton

Exhibit 4
Page 18

Exhibit 5

 **UNITED STATES**
**POSTAL SERVICE**

December 7, 2022

The following is in response to your request for proof of delivery on your item with the tracking number:
**9470 1036 9930 0069 1606 41.**

| Item Details | |
| --- | --- |
| **Status:** | Delivered, Individual Picked Up at Post Office |
| **Status Date / Time:** | December 7, 2022, 11:38 am |
| **Location:** | CINCINNATI, OH 45236 |
| **Postal Product:** | Priority Mail Express 2-Day® |
| **Extra Services:** | PO to Addressee |
| | Up to $100 insurance included |
| **Recipient Name:** | CCBANK ARBITRATION OPT OUT |
| **Actual Recipient Name:** | WAIVED |

Note: Actual Recipient Name may vary if the intended recipient is not available at the time of delivery.

| Shipment Details | |
| --- | --- |
| **Weight:** | 1lb, 1.0oz |

| Destination Delivery Address | |
| --- | --- |
| **Street Address:** | PO BOX 36454 |
| **City, State ZIP Code:** | CINCINNATI, OH 45236-0454 |

| Recipient Signature |
| --- |

The recipient's signature is not available because the waiver of signature that you authorized was exercised at the time of delivery.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

Exhibit 5
Page 19



# Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

> The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:
>
> - Indicating your preference on Case Management Form CM-110;
>
> - Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or
>
> - Agreeing to ADR at your Initial Case Management Conference.
>
> **QUESTIONS?** Call (510) 891-6055. Email: adrprogram@alameda.courts.ca.gov
> Or visit the court's website at http://www.alameda.courts.ca.gov/divisions/civil/adr

### What Are the Advantages of Using ADR?

- ***Faster*** – Litigation can take years to complete but ADR usually takes weeks or months.
- ***Cheaper*** – Parties can save on attorneys' fees and litigation costs.
- ***More control and flexibility*** – Parties choose the ADR process appropriate for their case.
- ***Cooperative and less stressful*** – In mediation, parties cooperate to find a mutually agreeable resolution.
- ***Preserve Relationships*** – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is the Disadvantage of Using ADR?

- ***You may go to court anyway*** – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- ***Mediation*** – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  - **Court Mediation Program**: Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o **Private Mediation**: This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o **Judicial Arbitration Program** (non-binding): The judge can refer a case, or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court.  If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

<b>Mediation Service Programs in Alameda County</b>

Low-cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services.  Contact the following organizations for more information:

**SEEDS Community Resolution Center**
2530 San Pablo Avenue, Suite A, Berkeley, CA 94702-1612
Telephone: (510) 548-2377  Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our
diverse communities – **S**ervices that **E**ncourage **E**ffective **D**ialogue and **S**olution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephones: (925) 337-7175 | (925) 337-2915 (Spanish)
Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607 Telephone: (510) 768-3100 Website: www.cceb.org Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

**ALA ADR-001**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*) | FOR COURT USE ONLY |
|---|---|
| | |

TELEPHONE NO.:                           FAX NO. (*Optional*):
E-MAIL ADDRESS (*Optional*):
ATTORNEY FOR (*Name*):

**SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME

PLAINTIFF/PETITIONER:
DEFENDANT/RESPONDENT:

| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | CASE NUMBER: |
|---|---|

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 24405 Amador Street, Hayward, CA 94544 or Fax to (510) 267-5727.

1.  Date complaint filed: _____. An **Initial Case Management Conference** is scheduled for:

    Date:                      Time:                      Department:

2.  Counsel and all parties certify they have met and conferred and have selected the following ADR process (*check one*):

    ☐ Court mediation          ☐ Judicial arbitration
    ☐ Private mediation        ☐ Private arbitration

3.  All parties agree to complete ADR within 90 days and certify that:

    a.  No party to the case has requested a complex civil litigation determination hearing;
    b.  All parties have been served and intend to submit to the jurisdiction of the court;
    c.  All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
    d.  Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
    e.  Case management statements are submitted with this stipulation;
    f.  All parties will attend ADR conferences; and,
    g.  The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶ _____
          (TYPE OR PRINT NAME)                              (SIGNATURE OF PLAINTIFF)

Date:

_____          ▶ _____

| Form Approved for Mandatory Use Superior Court of California, County of Alameda ALA ADR-001 [New January 1, 2010] | **STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS** | Cal. Rules of Court, rule 3.221(a)(4) |
|---|---|---|

(TYPE OR PRINT NAME)                    (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

**ALA ADR-001**

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____        ▶ _____

(TYPE OR PRINT NAME)                    (SIGNATURE OF DEFENDANT)

Date:

_____        ▶ _____

(TYPE OR PRINT NAME)                    (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp<br>**FILED**<br>Superior Court of California<br>County of Alameda<br>02/24/2023<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ A. Linhares _____ Deputy |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |
| PLAINTIFF:<br>Lakisha Cole Linton, individually and on behalf of all others similarly | |
| DEFENDANT:<br>Axcess Financial Services, Inc., an Ohio corporation et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>23CV028384 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

> Date: 06/26/2023     Time: 8:30 AM     Dept.: 23
>
> Location: Rene C. Davidson Courthouse
> Administration Building, 1221 Oak Street, Oakland, CA 94612

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>02/24/2023<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ A. Linhares _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Lakisha Cole Linton, individually and on behalf of all others similarly situated | |
| DEFENDANT/RESPONDENT:<br>Axcess Financial Services, Inc., an Ohio corporation et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>23CV028384 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.


Zachariah Dostart
Dostart Hannink LLP
4225 Executive Square Suite 600
La Jolla, CA 92037


Chad Finke, Executive Officer / Clerk of the Court

Dated: 02/28/2023                    By:

A. Linhares, Deputy Clerk


**CERTIFICATE OF MAILING**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>02/28/2023<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ A. Linhares _____ Deputy |
| PLAINTIFF:<br>Lakisha Cole Linton, individually and on behalf of all others similarly | |
| DEFENDANT:<br>Axcess Financial Services, Inc., an Ohio corporation et al | |
| **NOTICE OF COMPLEX DETERMINATION HEARING** | CASE NUMBER:<br>23CV028384 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all parties omitted from this notice or brought into the action after this notice was mailed.

Your Complex Determination Hearing has been scheduled on:

> Date: 04/04/2023      Time: 9:15 AM      Dept.: 23
>
> Location: Rene C. Davidson Courthouse
>            Administration Building, 1221 Oak Street, Oakland, CA 94612

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Determination Hearing.

The judge may place a tentative ruling in your case's on-line register of actions before the hearing. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative rulings at https://eportal.alameda.courts.ca.gov.

**NOTICE OF COMPLEX DETERMINATION HEARING**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>02/28/2023<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ A. Linhares _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Lakisha Cole Linton, individually and on behalf of all others similarly situated | |
| DEFENDANT/RESPONDENT:<br>Axcess Financial Services, Inc., an Ohio corporation et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>23CV028384 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Complex Determination Hearing upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Zachariah Dostart
Dostart Hannink LLP
4225 Executive Square Suite 600
La Jolla, CA 92037

Chad Finke, Executive Officer / Clerk of the Court

Dated: 02/28/2023                    By:

A. Linhares, Deputy Clerk

**CERTIFICATE OF MAILING**

# Exhibit 2

| Attorney or Party without Attorney:<br>Zach P. Dostart, Esq., Bar #255071<br>Dostart Hannink LLP<br>4225 Executive Square<br>Suite 600<br>La Jolla, CA  92037<br>Telephone No: 858-623-4200<br><br>Attorney for: Plaintiff(s) | | For Court Use Only<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>03/03/2023 at 09:37:37 AM<br>By: Andrel Gospel,<br>Deputy Clerk |
|---|---|---|
| | Ref. No. or File No.: | |
| Insert name of Court, and Judicial District and Branch Court:<br>Alameda County Superior Court | | |
| Plaintiff(s): Lakisha Cole Linton, et al. | | |
| Defendant: Axcess Financial Services, Inc. | | |

| **PROOF OF SERVICE**<br>**Summons & Complaint** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>23CV028384 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Management Conference; Notice of Complex Determination Hearing; ADR Information Packet

*3. a. Party served:*  Axcess Financial Services, Inc., an Ohio corporation
*b. Person served:*  Koy Saechao, Service of Process Intake Clerk, Asian, Female, Age 45, Black Hair, Brown Eyes, 5'5, 150lbs.

*4. Address where the party was served:*  Corporation Service Company<br>2710 Gateway Oaks Dr. # 150N<br>Sacramento, CA  95833

*5. I served the party:*
a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Tue., Feb. 28, 2023 (2) at: 2:42PM

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
*on behalf of:*  Axcess Financial Services, Inc., an Ohio corporation
Under CCP 416.10 (corporation)

**7. *Person Who Served Papers:***
a. Robert J. Mason
**b. Class Action Research & Litigation**
P O Box 740
Penryn, CA  95663
c. (916) 663-2562, FAX (916) 663-4955

Recoverable Cost Per CCP 1033.5(a)(4)(B)
d. **The Fee for Service was:** $101.75
e. I am: (3)  registered California process server
*(i)* Independent Contractor
*(ii) Registration No.:*  03-007
*(iii) County:*  Placer

*8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

Date:  Thu, Mar. 02, 2023

(Robert J. Mason)

PROOF OF SERVICE
Summons & Complaint

zados.244987

# Exhibit 3

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse, Department 23

## JUDICIAL OFFICER: HONORABLE BRAD SELIGMAN

Courtroom Clerk: Jhalisa Castaneda                                        CSR: None

---

**23CV028384**                                                                 April 4, 2023
                                                                                       9:15 AM

**LINTON, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED
   vs
AXCESS FINANCIAL SERVICES, INC., AN OHIO
CORPORATION, et al.**

---

## MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Complex Determination Hearing**

The Complex Determination Hearing scheduled for 04/04/2023 is continued to 05/30/2023 at
03:00 PM in Department 23 at Rene C. Davidson Courthouse.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

By:            J. Castaneda, Deputy Clerk
                      Minutes of: 04/04/2023
                      Entered on: 04/04/2023

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse

| | |
|---|---|
| Lakisha Cole Linton, individually and on behalf of all others similarly situated<br><br>Plaintiff/Petitioner(s)<br>vs.<br>Axcess Financial Services, Inc., an Ohio corporation et al<br>Defendant/Respondent(s) | No.      23CV028384<br><br>Date:    04/04/2023<br>Time:    9:15 AM<br>Dept:    23<br>Judge:   Brad Seligman<br><br><br>ORDER re: Complex Determination<br>Hearing |

The Complex Determination Hearing scheduled for 04/04/2023 is continued to 05/30/2023 at 03:00 PM in Department 23 at Rene C. Davidson Courthouse.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Dated: 04/04/2023

Brad Seligman / Judge

---

ORDER re: Complex Determination Hearing                                              Page 1 of 1

# Exhibit 4

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ALAMEDA

**23CV028384: LINTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED vs AXCESS FINANCIAL SERVICES, INC., AN OHIO CORPORATION, et al.**
**04/04/2023 Complex Determination Hearing in Department 23**

Tentative Ruling - 03/30/2023 Brad Seligman

The Complex Determination Hearing scheduled for 04/04/2023 is continued to 05/30/2023 at 03:00 PM in Department 23 at Rene C. Davidson Courthouse.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

HOW DO I CONTEST A TENTATIVE RULING?

THROUGH ECOURT
Notify the Court and all the other parties no later than 4:00 PM one court day before the scheduled hearing, and briefly identify the issues you wish to argue through the following steps:
1. Log into eCourt Public Portal
2. Case Search
3. Enter the Case Number and select "Search"
4. Select the Case Name
5. Select the Tentative Rulings Tab
6. Select "Click to Contest this Ruling"
7. Enter your Name and Reason for Contesting
8. Select "Proceed"

BY EMAIL
Send an email to the DEPARTMENT CLERK and all the other parties no later than 4:00 PM one court day before the scheduled hearing. This will permit the department clerk to send invitations to counsel to appear remotely.

Notice via BOTH eCourt AND email is required.